# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANA K. WILLIAMS, | 1:04cv5415 DLB |
| Plaintiff, | ORDER REGARDING DEFENDANTS' MOTION TO DISMISS |
| v. | (Document 28-1) |
| COMMISSIONER OF SOCIAL SECURITY, et al., | |
| Defendants. | |

Plaintiff, proceeding pro se, filed the instant action on March 10, 2004. The complaint is entitled "Complaint for Breach of Contract, Request for Widow's Benefits, for Retroactive Widow's, for Medicare, Complaint for Fraud and Privacy Act and Harassment." As Defendants, Plaintiff names numerous Social Security Administration ("SSA") employees who were involved in the decisions regarding her benefits under the Social Security Act ("Act").

On March 28, 2006, Defendants filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12( b)(6). Specifically, Defendants argue that Plaintiff has failed to exhaust her administrative remedies. Plaintiff filed her opposition on April 20, 2006. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On May 31, 2006, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

**BACKGROUND**

According to the Declaration of Dennis V. Ford, Acting Chief of Court Case Preparation and Review Branch 1 of the Office of Appellate Operations, Office of Hearings and Appeals, Plaintiff has filed numerous applications under the Act.[2]

On January 15, 1984, Plaintiff applied for disability benefits under Title II of the Act. Her application was denied initially and she did not seek administrative review. Declaration of Dennis V. Ford ("Ford Dec."), ¶ 3.

On June 15, 1987, Plaintiff applied for widow's insurance benefits under Title II of the Act. Her application was denied and she did not seek administrative review. Ford Dec., ¶ 3. Plaintiff filed for widow's insurance benefits again on November 20, 2002. Her application was denied and she did not seek administrative review. Ford Dec., ¶ 3.

On May 28, 1987, Plaintiff applied for supplemental security income under Title XVI of the Act. Her application was granted and she was found eligible for benefits beginning in May 1987. In August 2003, Plaintiff was notified that she had been ineligible to receive benefits since July 2001, and that her benefits would terminate beginning in September 2003. Plaintiff did not seek administrative review of this decision. Ford Dec., ¶ 3. In October 2003, Plaintiff was informed that she had been overpaid benefits for the months July 2001 through August 2003. Plaintiff did not appeal this action. Ford Dec., ¶ 3.

On March 10, 2004, Plaintiff filed her complaint in this Court. She alleges seven causes of action, although each is very brief and, despite the titles, many relate to Plaintiff's various applications for social security benefits. The First Cause of Action, entitled, "Breach of Contract," simply alleges that Plaintiff signed a "contract for widows benefits" on or about March 1995 and again on November 20, 2002. She alleges that one of the Defendants, Ann Keag, stated that "widows automatic." Complaint, at 1.

---

[2] There are discrepancies between the dates cited in Mr. Ford's declaration and those cited in Defendants' briefing. For purposes of this motion, the Court will use the dates set forth by Mr. Ford. In any event, the dates are not pertinent to the outcome of Defendants' motion.

1   The Second Cause of Action "for Widow's Benefits" alleges that she should have
2   received monthly raises, not yearly, and sets forth what she believes her present monthly income
3   should be.  Complaint, at 1-2.
4   The Third Cause of Action is a "Request for Retroactive Widows," and alleges that
5   Plaintiff is owed "approximately $28,164.00 to $281,640.00."  Complaint at 2.
6   Plaintiff's Fourth Cause of Action is for "Medicare." Plaintiff alleges that Medicare
7   coverage "on widows is mandatory" and that "no medical coverage by Social Security since
8   December 2004."  Complaint, at 2.
9   The Fifth Cause of Action is for "Fraud."  Plaintiff alleges that there was an "over-
10  payment of $19,329.03 fraudulent for three years," that "coercion was applied in obtaining
11  account records and against [her] will," and that a "letter of threat to sign in fraudulent over
12  payment, 'sign these or we will cut you off,' dated 7-11-03."  She further alleges that her income
13  was cut off illegally in September 2003.  Complaint, at 2.
14  Plaintiff's Sixth Cause of Action for "Privacy Act" alleges that her right to privacy was
15  violated by coercion and threats, that Richard Lara threatened to cut off her income if she did not
16  tell him "what was wrong with her," and that "Richard Lara stalked [her] for approximately one
17  (1) year beginning November 2002.  Green SUV."  Complaint, at 2-3.
18  Plaintiff's Seventh Cause of Action is for harassment.  She alleges that Janet Blanketship
19  used personal slurs and lies by stating, "we know that you have a common law husband," "how
20  do you feed your animals," and "do you have any money left over?"  Complaint, at 3.  She
21  further alleges that her phone calls were not returned by Ann Keag and that approximately ten
22  years ago, the Madera branch of the SSA "harassed" her.  Complaint, at 3.
23  For relief, Plaintiff requests "28,164.00 to $281,640.00 for breach of contract," $250,000
24  for fraud, $10,000,000 for violation of her right to privacy, and $2,500,000 for punitive damages.
25  Complaint, at 3-4.
26
27  **DISCUSSION**
28  A.   Motion To Dismiss Standards

1    F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A plaintiff has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, (1994). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the Court is whether the lack of federal jurisdiction appears from the face of the pleading. *Thornhill Publishing Co. v. General Telephone Electronics*, 594 F.2d 730, 733 (9th Cir. 1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts to support the claim to entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence, either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

B.   Exhaustion Requirement

Section 405 governs judicial review of final decisions denying claims under Title XVI of the Social Security Act and provides in pertinent part:

> (g) Judicial Review. Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . .
>
> (h) Finality of Commissioner's decision. . . . No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person,

> tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405.

As noted by the Commissioner, in claims arising under the Act, judicial review is permitted only in accordance with section 405(g). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Administration v. Burr*, 309 U.S. 242, 244 (1940).  "Sovereign immunity is jurisdictional in nature." *Meyer*, 510 U.S. at 475.  The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1983).  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Where a statute creates a right, including a right to sue, and provides a special remedy, "that remedy is exclusive." *United States v. Babcock*, 250 U.S. 328, 331 (1919).  As such, Section 405(g) is the exclusive jurisdictional basis for judicial review of cases arising under the Act.

Section 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Commissioner of Social Security made after a hearing.'" *Califano v. Sanders*, 430 U.S. 99, 108 (1977).  The term "final decision" is undefined by the Act and "its meaning is left to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 767 (1975).  20 C.F.R. 404.900(a) outlines a four-step administrative review process before culmination in judicial review.  "The Act and regulations thus create an orderly administrative mechanism, with district court review of the final decision of the [Commissioner], to assist in the original processing of the more than 7,600,000 claims filed annually with the Administration." *Sanders*, 430 U.S. at 102.

An initial determination is binding unless a claimant requests reconsideration.  20 C.F.R. § 404.905.  If the claimant proceeds to a hearing before an ALJ, the ALJ's decision is binding if a

claimant does not seek Appeals Council review. *See* 20 C.F.R. §§ 404.955 and 416.1455. If a claimant seeks Appeals Council review, the Appeals Council may deny the request, making the ALJ's decision final, or review the case and make a decision. 20 C.F.R. §§ 404.967, 404.981. The Appeals Council's decision, or the ALJ's decision if the request for review is denied, is binding unless an action for federal district court review is filed within 60 days after receiving notice of the Appeals Council's action. 20 C.F.R. § 404.981; *see* 20 C.F.R. 422.210. Under the regulations, a judicially reviewable final decision is available only if the claimant completes the administrative review process and receives either an Appeals Council decision or an Appeals Council notice that it denies a request to review the ALJ's decision. 20 C.F.R. §§ 404.981 and 422.210.

C.    Analysis

    1.    Plaintiff's Social Security Claims

Although Plaintiff states numerous causes of action, her complaint essentially challenges the SSA's denial of widow's benefits. It is unclear from Plaintiff's complaint whether she believes she was receiving widow's benefits and that those benefits were wrongly terminated, or whether she believes she was wrongly denied widow's benefits. As established by Mr. Ford's declaration, Plaintiff's two applications for widow's benefits were denied in 1987 and 2002. Plaintiff received SSI disability benefits until the benefits were discontinued in 2003. Regardless of Plaintiff's unclear allegations, she has not exhausted her administrative remedies as to *any* of her SSI claims.

Based on the declaration of Mr. Ford, which Plaintiff does not dispute, Plaintiff pursued this judicial action without requesting further review of the SSA's initial denials, termination decision, or overpayment notice. Plaintiff did not request review of the decisions and thus never had a hearing before an ALJ. Plaintiff therefore waived her opportunity for a hearing and failed to exhaust the administrative remedy upon which judicial review depends. *See* 20 C.F.R. § 404.905 (initial determination binding unless claimant seeks reconsideration). The long acknowledged general rule is that "parties exhaust prescribed administrative remedies before seeking relief from federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-145 (1992). In

*McCarthy*, 503 U.S. at 144-145, the Supreme Court explained the public policy rationale for exhaustion:

> Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.
>
> As to the first of these purposes, the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer. Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise. [Citations omitted.] The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. . . .
>
> As to the second of the purposes, exhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. [Citations omitted.] And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context.

Section 405(g)'s scheme is "one in which the [Commissioner] may specify such requirements for exhaustion as [she] deems serve [her] interests in effective and efficient administration." *Weinberger,* 422 U.S. at 766.

By failing to request reconsideration of the initial determinations and other actions, Plaintiff failed to exhaust administrative remedies. In the absence of a final decision as defined by the Commissioner, Plaintiff has failed to invoke this Court's jurisdiction. *See Hoye v. Sullivan*, 985 F.2d 990, 991 (9th Cir. 1992) (claimant failed to exhaust administrative remedies in not participating in hearing before ALJ). Plaintiff provides no grounds to waive the exhaustion requirements.

Accordingly, to the extent Plaintiff challenges the SSA's denial of benefits and other determinations, her claims are unexhausted and must be dismissed.

2. Medicare Claim

Insofar as Plaintiff alleges that she is entitled to Medicare coverage, the SSA does not administer Medicare and therefore has no control over the Medicare program. The Medicare

program is administered by the Department of Health and Human Services, and Plaintiff should contact this agency if she has concerns. Accordingly, Plaintiff fails to state a claim regarding Medicare coverage against the named Defendants.

3.     Harassment, Right to Privacy and Fraud Claims

Finally, Plaintiff's claims involving harassment, violation of her right to privacy and fraud by SSA employees fail to state a claim upon which relief can be granted.

First, the scope of review in a social security disability benefit action is limited to whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Plaintiff's harassment, right to privacy and fraud claims are therefore beyond the scope of this Court's review. If Plaintiff wishes to pursue those claims, she may file a civil rights action.

Second, a majority of the facts upon which Plaintiff bases these claims are facts that were relevant to her applications for benefits. For example, Plaintiff alleges that she was harassed by certain SSA employees when they questioned her about her finances and marital status. However, as Defendants point out, Plaintiff's finances and marital status were relevant to her SSI benefits. *See* 20 C.F.R. § 416.202 (summarizing SSI eligibility requirements); 20 C.F.R. § 416.207 (requiring claimant to give SSA permission to contact financial institutions); 20 C.F.R. § 416.1160 (explaining that a spouse's income will be taken into consideration). Similarly, Plaintiff alleges that Richard Lara violated her privacy rights by threatening to cut off her income if she did not "tell him what was wrong with her." Complaint, at 3. Plaintiff's medical status is certainly relevant to her SSI benefits, and she was obligated to inform SSA of any changes in her eligibility status. 20 C.F.R. § 416.988. SSA also conducts reviews of SSI beneficiaries to determine their continuing eligibility. 20 C.F.R. § 416.989.

Accordingly, Plaintiff's allegations of harassment, fraud, and violation of her privacy rights fail to state claims for which relief may be granted.

**CONCLUSION**

For the reasons discussed above, this Court GRANTS Defendants' motion to dismiss and ORDERS that this action be dismissed without prejudice. This Court DIRECTS the Clerk of this

Court to enter judgment in conformity with this order, in favor of Defendants and against Plaintiff Lana K. Williams, and to close this action.

IT IS SO ORDERED.

Dated: June 1, 2006            /s/ Dennis L. Beck
3b142a                          UNITED STATES MAGISTRATE JUDGE